IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ELIZABETH STRAND and AMARA ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> USANA HEALTH SCIENCES, INC., <br><br> Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** <br><br> Case No. 2:17-CV-925 <br><br> District Judge Jill N. Parrish |

Before the court is Defendant's Motion to Dismiss (ECF No. 26). Plaintiffs' complaint alleges three claims: (1) breach of the implied covenant of good faith and fair dealing, (2) breach of contract, and (3) unjust enrichment. Defendant's motion asks this court to dismiss all three under Rule 12(b)(6) for failure to state a claim. The court heard oral argument on the motion on December 13, 2017 and took the matter under advisement. For the reasons below, the court grants Defendant's motion in part and denies it in part. Plaintiffs shall have leave to amend the complaint.

## I. BACKGROUND[1]

Plaintiff Elizabeth Strand resides in South Dakota with her husband, Dr. Ray Strand. Mrs. Strand is the sole registered owner of Plaintiff Amara Enterprises, Inc.

In 1995, Mrs. Strand entered into a contract (the "Distributor Agreement") with Defendant USANA Health Sciences, Inc., which sells nutritional supplements and health products using a multi-level marketing business model. Under the Distributor Agreement, Mrs.

---

[1] As always at this stage, the court takes the facts alleged in the complaint as true and makes reasonable inferences in the light most favorable to the non-moving party.

Strand became an "Associate"—an authorized distributor in USANA's independent distributor program. In 2000, Mrs. Strand incorporated Amara Enterprises, Inc., and she began distributing through that entity.

Mrs. Strand was very successful. At one point, she ran fourteen business centers generating over $1 million of commissionable business for USANA each year. From 1995 to 2011, Mrs. Strand was consistently among the top fifty "earners" for USANA and was frequently among the top twenty-five "enrollers" of new USANA preferred customers (customers to whom USANA sold directly, rather than through its multi-level marketing system).

While Mrs. Strand was operating as a USANA Associate, Dr. Ray Strand began consulting with USANA as an independent nutrition expert. USANA paid him $2,000 a year for his work. Dr. Strand's consulting with USANA coincided with speaking engagements with other companies, including USANA competitors Quixtar, the Yager Group, Nutrilite, and Nature's Way.

From 2007 to 2011, USANA suffered significant setbacks. Its stock plummeted, and more than 100,000 associates left the company. Amidst USANA's struggles, a number of key executives and board members started a new competitor: Ariix, LLC.

In May 2011, Dr. Strand entered into discussions to speak on behalf of and consult with Ariix. Late the next month, USANA President Kevin Guest spoke with Dr. Strand regarding Dr. Strand's discussions with Ariix. Mr. Guest informed Dr. Strand that a "household clause" in Mrs. Strand's Distributor Agreement prohibited Dr. Strand from participating in unauthorized recruiting activities and that if Dr. Strand participated in the webinar, he would jeopardize his wife's business.

In a July 2011 meeting, USANA chief legal officer and general counsel James Bramble reiterated to Mrs. Strand that the "household clause" applied to Dr. Strand and that if Dr. Strand promoted Ariix's products, Mrs. Strand would be subject to termination under USANA's policies and procedures. At the same meeting, Mrs. Strand indicated to Mr. Bramble that she intended to sell Amara before Dr. Strand began promoting Ariix products. Mr. Bramble indicated that once Mrs. Strand selected a buyer, USANA would approve and transfer Amara within two weeks.

Days after the meeting, Mrs. Strand submitted an application for Amara's sale and transfer, expecting that the sale would be approved and completed within two weeks. However, USANA did not approve the sale and transfer within two weeks. Instead, USANA began an investigation into the sale and imposed additional and unprecedented procedures. USANA also extended the expected transfer period from two weeks to seven weeks. Ultimately, the prospective buyer became discouraged and withdrew her offer to purchase Amara on August 6, 2011.

Two days later, on August 8, 2011, Mr. Bramble notified Mrs. Strand that Ariix was advertising a webinar that would be broadcast on August 9, 2011 and would feature Dr. Strand. Mr. Bramble indicated that if Dr. Strand went forward with the webinar, his actions would constitute a breach of the Distributor Agreement.

On August 9, 2011, Dr. Strand made the scheduled webinar with Ariix. On September 8, 2011, Mr. Bramble sent a letter on behalf of USANA terminating Mrs. Strand and citing Section 3.6 of USANA's policies and procedures, which prohibits distributors from selling similar or competitive products to other USANA distributors.

On August 15, 2017, Mrs. Strand and Amara filed a complaint in this district. They allege that USANA's actions constitute breach of the implied covenant of good faith and fair dealing, breach of contract, and unjust enrichment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits defendants to test the legal sufficiency of a complaint prior to discovery. Therefore, the court accepts all well-pleaded allegations of the complaint as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). The court also draws reasonable inferences from the allegations and views those in the light most favorable to the plaintiff. *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."). The court therefore reviews the challenged portions of the complaint to determine whether they contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.     DISCUSSION

Defendant challenges Plaintiffs' claims for breach of contract, for breach of the implied covenant of good faith and fair dealing, and for unjust enrichment, in that order. The court addresses each below. However, as a preliminary matter, the court must first address three exhibits attached to Defendant's Motion to Dismiss.

## A. DEFENDANT'S EXHIBITS

Defendant attached three documents to its Motion to Dismiss: the Distributor Agreement between Mrs. Strand and USANA, the DBA Registration Form permitting Mrs. Strand to do business as Amara Enterprises, Inc., and USANA's 2010 Policies and Procedures.

Plaintiffs object to Defendant's exhibits because, "[w]hen ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint" and "cannot review matters outside of the complaint." *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). Plaintiffs correctly characterize the law. "Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). However, "[c]ourts are permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (citation omitted). Defendant argues that the three documents attached to its motion are referred to in the complaint, are central to Plaintiffs' claims, and their authenticity is undisputed. The court considers each in turn.

### 1. Exhibit A: The Distributor Agreement

Defendant's Exhibit A purports to be a copy of the 1995 Distributor Agreement between Mrs. Strand and USANA. Plaintiffs' complaint clearly refers to a 1995 contract between Mrs. Strand and USANA. ECF No. 2 at ¶ 13. And that contract is indisputably central to Plaintiffs' breach-of-contract claim. Therefore, the question is whether the document's authenticity is disputed.

Defendant describes Exhibit A as a less-redacted version of the Distributor Agreement attached to Plaintiffs' complaint. Believing the two documents to be the same (but with different

5

redactions), Defendant complains that Plaintiffs have simply redacted information that would "contradict the legal conclusions they ask this court to draw in their favor." ECF No. 33 at 3. Defendant further contends that the court should examine "the document itself, rather than the complaint's description of it." *Toone*, 716 F.3d at 521.

At first blush, the documents appear to be identical. However, the court's review of the documents submitted by Plaintiffs and by Defendant (heavily redacted though they are) reveals that these are not simply copies of the same document with different redactions. For example, Plaintiffs' version of the Distributor Agreement redacts only twelve spaces where the applicant's name would appear. Defendant's version does not redact the name, and the name "STRAND Elizabeth Jane" occupies twenty-one spaces. Plaintiffs' version also redacts the applicant's signature line, but some handwriting is visible above and below the redaction. Defendant's version does not redact the signature line, and the signature on Defendant's version (which reads "Elizabeth J. Strand") clearly does not match that of Plaintiff's version. These and other discrepancies demonstrate that these are not copies of the same document.

Defendant's confusion is understandable. Plaintiffs' complaint does not identify whether its attached Distributor Agreement is a 1995 agreement between Mrs. Strand and USANA or a later agreement between Amara and USANA. The complaint simply alleges that, "[i]n 2000, Strand incorporated Amara and began operating the distributorship through that entity," and cites to an attached exhibit. ECF No. 2 at ¶ 13. It was not until Plaintiffs submitted their response to Defendant's motion that they explicitly claimed that "Plaintiffs' complaint incorporated a redacted version of the relevant distributor agreement entered into between USANA and Amara as Exhibit A." ECF No. 31 at 16. But at oral argument, Plaintiffs admitted that Exhibit A attached to their complaint is not actually an agreement between USANA and Amara. Nor is it

6

an agreement between Mrs. Strand and USANA. In fact, it is an agreement between some unrelated party and USANA. Plaintiffs believe it to be similar to an agreement signed between Mrs. Strand and USANA in 1995.[2]

Despite Plaintiffs' objections to Defendant's exhibit, Plaintiffs do not dispute its authenticity. They make the legalistic argument that Defendant has not authenticated Exhibit A, but they do not actually challenge the authenticity of the exhibit, which bears Mrs. Strand's signature. Consequently, the document's authenticity is undisputed, and the court may consider it without converting Defendant's motion to one for summary judgment. *See Toone*, 716 F.3d at 521 ("Courts are permitted to review documents referred to in the complaint if the documents are central to the plaintiff's claim *and the parties do not dispute the documents' authenticity*." (citation omitted) (emphasis added)); *see also Borders v. Chase Home Finance L.L.C.*, 2009 WL 1870916, at *4–5 (E.D. La. Jun. 29, 2009) (considering settlement agreement documents because the plaintiff "*has not challenged the substantive validity* of the Settlement agreement documents attached to [the defendant's] motion").

### 2. Exhibit B: The DBA Registration Form

Defendant's Exhibit B purports to be a DBA Registration Form by which Mrs. Strand began doing business with USANA as Amara.

---

[2] Prior to oral argument, the court was highly skeptical of Plaintiffs' attempts to represent their heavily redacted Distributor Agreement as a 2000 agreement between Amara and USANA. The court is concerned that Plaintiffs represented to the court that their exhibit was an agreement between the parties, knowing that their representations were inaccurate. The court reminds Plaintiffs that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). The court expects that Plaintiffs will rectify this error going forward. However, if Plaintiffs submit documents to this court knowing that they are not what they purport to be, Plaintiffs and their counsel may be subject to Rule 11 sanctions.

Defendant argues that Plaintiffs referenced the DBA Registration Form in their complaint, but a review of the complaint does not support this argument. Paragraph thirteen of the complaint alleges that Mrs. Strand "incorporated Amara and began operating the distributorship through that entity." And paragraph fifty-five identifies a distributor agreement and USANA's terms and conditions, policies and procedures, and compensation plan as constituting a valid and enforceable written contract between Amara and USANA. But neither paragraph mentions a DBA Registration Form explicitly, and it is plain from Defendant's exhibits that distributor agreements and dba registration forms are distinct documents. Because the complaint does not make reference to the DBA Registration Form, the court will not consider Defendant's Exhibit B in its analysis below.

3. **Exhibit C: USANA's Policies and Procedures**

Defendant's Exhibit C purports to be a copy of USANA's 2010 Policies and Procedures. Plaintiffs' complaint makes numerous references to USANA's Policies and Procedures. *See, e.g.*, ECF No. 2 at ¶¶ 7, 33, 34, 46, 51, 55 & 65. And the content and applicability of the Policies and Procedures are clearly central to Plaintiffs' complaint because the Policies and Procedures are incorporated into the contract at issue.

However, it became apparent at oral argument that the Policies and Procedures have changed from time to time. And Plaintiffs represented that they had not seen the 2010 Policies and Procedures prior to receiving Defendant's memorandum and its attached exhibits. They further indicated that Defendant's Exhibit C differed substantially from copies of the Policies and Procedures to which they had access. Consequently, the court is not prepared to consider Defendant's Exhibit C for the purposes of this motion. Furthermore, as explained below, the exhibit is not necessary to the proper disposition of this motion.

### B. BREACH OF CONTRACT

Plaintiffs bring claims for breach of contract against Defendant, arguing that Defendant wrongly terminated their contracts. In Utah, the elements of a *prima facie* case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages. *Nuttal v. Berntson*, 30 P.2d 738, 741 (Utah 1934). A brief inquiry reveals that Plaintiffs have failed to plead the first element with regard to Amara and the second element with regard to Mrs. Strand.

#### 1. Amara

Plaintiffs allege that Mrs. Strand and USANA entered into the Distributor Agreement in 1995. Plaintiffs further allege that Mrs. Strand incorporated Amara in 2000 and that Mrs. Strand began operating her USANA distributorship through Amara. ECF No. 2 at ¶ 13. But Plaintiffs do not allege that Mrs. Strand ever assigned her contractual rights under the Distributor Agreement to Amara or that Amara itself entered into a similar agreement with USANA. By Plaintiffs' admission, the Distributor Agreement referenced in and attached to the complaint is not a contract between Amara and USANA. Consequently, Plaintiffs' conclusory allegation that "[t]he distributor agreement, along with USANA's terms and conditions, policies and procedures, and compensation plan[,] is a valid and enforceable written contract between Amara and USANA," *id.* at ¶ 55, is not supported by the factual allegations of the complaint. Therefore, Plaintiffs do not state a *prima facie* breach-of-contract claim by Amara against USANA because they do not plausibly allege a contract between the two parties. Consequently, Amara's claim for breach of contract must be dismissed.[3]

---

[3] The court also notes that Plaintiffs' complaint alleges that USANA wrongfully terminated Strand—not Amara. ECF No. 2 at ¶ 51 ("On September 8, 2011, Mr. Bramble sent a letter on behalf of USANA wrongfully terminating Strand and citing Section 3.6 of USANA's policies and procedures."). This omission further underscores the complaint's lack of allegations

### 2. Mrs. Strand

Mrs. Strand's breach-of-contract claim is similarly incomplete. The complaint clearly satisfies the first element by alleging that Mrs. Strand entered into a contract with USANA in 1995. But Plaintiffs do not allege performance by Mrs. Strand. Paragraph thirty-nine of the complaint does allege that Mrs. Strand never violated the term of the Distributor Agreement involving unauthorized recruiting, but the pleadings do not allege that Mrs. Strand fulfilled her other contractual obligations.[4] Consequently, Plaintiffs have failed to state a *prima facie* case for breach of contract by Mrs. Strand against USANA, so her claim for breach of contract must also be dismissed.

### 3. Plaintiffs' Alleged Breach

Defendant argues that Plaintiffs' breach-of-contract claims should also be dismissed because Plaintiffs themselves breached the Distributor Agreement, so the contract termination was for cause. Paragraph twelve of the Distributor Agreement permits USANA to terminate the distributorship upon an associate's violating the provisions of the Distributor Agreement or the Policies or Procedures. Defendant argues that associates are liable for actions by others in their immediate households. ECF No. 26 at 9. Consequently, Mrs. Strand was liable for the contents of her husband's webinar for Ariix, which constituted an unauthorized recruiting activity. *Id.*

---

regarding an agreement between Amara and USANA. It also calls into question whether Amara suffered any damages since Plaintiffs have not alleged that Amara was ever terminated.

At oral argument, Plaintiffs contended that "Strand" was a defined term that included both Mrs. Strand and Amara. However, Plaintiffs' inconsistent use of defined terms in their complaint (including "Strand," which Plaintiffs sometimes use in reference to Mrs. Strand and Amara together and sometimes in reference to Mrs. Strand alone) makes it difficult to discern to which party the complaint refers.

[4] By contrast, Plaintiffs allege that "Amara at all relevant times acted in good faith executing the contract and never violating any term with USANA." ECF No. 2 at ¶ 64.

Plaintiffs' complaint does concede that Dr. Strand "made a webinar with Ariix." ECF No. 2 at ¶ 49. However, the contents of that webinar are not before the court on this motion to dismiss. Therefore, it is unclear whether Dr. Strand promoted a competitive product or engaged in unauthorized recruiting. Consequently, it would be premature to conclude that Dr. Strand's webinar constituted a breach of contract. Those are factual issues more suited for a motion for summary judgment or a trial.[5]

C. GOOD FAITH AND FAIR DEALING

Plaintiffs also bring claims for breach of the implied covenant of good faith and fair dealing. In Utah, "[a]n implied covenant of good faith and fair dealing inheres in every contract. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004) (citations omitted). "A violation of the covenant gives rise to a claim for breach of contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

Defendant argues that these claims should be dismissed because "USANA terminated the distributorship in accordance with the terms of the Distributor Agreement and the Policies and Procedures." ECF No. 26 at 12. However, as the court noted above, whether USANA terminated

---

[5] Even if the court were to consider Defendant's Exhibit C as a correct copy of the 2010 Policies and Procedures, the court still could not find that the webinar constituted a breach of contract. Section 3.6 of Policies and Procedures contained in Exhibit C prohibits associates from "presenting or assisting in the presentation of other multi-level marketing business ventures *to any USANA Preferred Customer or Associate*, or implicitly or explicitly *encouraging any USANA Preferred Customer or Associate to join other business ventures*." (emphasis added). Plaintiff's complaint contains no indication as to who viewed the webinar or to whom it was directed. It is possible that the webinar was not directed at, nor was it viewed by, any USANA preferred customer or associate.

the distributorship for cause hinges on factual issues inappropriate for determination on a motion to dismiss.

Still, a claim for breach of the implied covenant of good faith and fair dealing requires the existence of a contract, which Plaintiffs have not plausibly alleged with regard to Amara. Therefore, Amara's claim for breach of the implied covenant of good faith and fair dealing must be dismissed. Mrs. Strand's claim survives, however. She has plausibly alleged that Defendant owed her a duty of good faith and fair dealing regarding their contract, that Defendant breached that duty, and that she has been injured as a result.

### D. UNJUST ENRICHMENT

Finally, Plaintiffs bring a claim for unjust enrichment, but Defendant contends that this claim is barred by the Utah statute of limitations. Plaintiffs' unjust enrichment claim arises from Defendant's termination of Mrs. Strand's distributorship on September 8, 2011. But Plaintiffs did not file suit until August 15, 2017—almost six years later. Plaintiffs argue that South Dakota's six-year limitation should apply, rather than Utah's four-year limitation. But Defendant is correct: Utah law applies.

Federal courts sitting in diversity follow the procedural law of the forum state, regardless of whether they apply the substantive law of the forum state or another state. *Rocky Mtn. Helicopters, Inc. v. Bell Helicopter Texatron, Inc.*, 24 F.3d 125, 128 (10th Cir. 1994); *see also Sun Oil Co. v. Wortmann*, 486 U.S. 717, 728–29 (1988) (application of the forum state's statutes of limitation is consistent with the traditional view that such statutes are procedural and is consistent with the Full Faith and Credit Clause of the U.S. Constitution). Utah follows the majority position and treats statutes of limitations as procedural in nature. *Lee v. Gaufin*, 867 P.2d 572, 575 (Utah 1993). Therefore, Utah's statutes of limitation apply to actions brought in Utah. *Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah Ct. App. 1994).

Consequently, the court looks to Utah law, which limits recovery on actions not specified in the Utah Code (including for unjust enrichment) to four years. Utah Code Ann. § 78B-2-307(3). Because Plaintiffs' 2017 claim for unjust enrichment arises from USANA's actions in 2011, Plaintiffs' claim for unjust enrichment is untimely and must be dismissed.

## IV.   PLAINTIFFS' MOTION FOR LEAVE TO AMEND

At oral argument, Plaintiffs moved for leave to amend their complaint to remedy any deficiencies. Defendant indicated that, to the extent the court believed an amended complaint would be able to cure the complaint's deficiencies, the court should grant leave to amend. The court has identified deficiencies in this order that it believes Plaintiffs may be able to remedy in an amended complaint. Therefore, Plaintiffs' motion for leave to amend is granted.

## V.   ORDER

For the reasons above, the court ORDERS that

1. Plaintiffs' breach-of-contract claims are DISMISSED WITHOUT PREJUDICE.

2. Amara's claim for breach of the implied covenant of good faith and fair dealing is DISMISSED WITHOUT PREJUDICE.

3. Plaintiffs' claims for unjust enrichment are DISMISSED WITH PREJUDICE as untimely.

4. Plaintiffs' motion for leave to amend is GRANTED. Plaintiffs may file an amended complaint within thirty days of this order.

Signed December 20, 2017

                                  BY THE COURT

                                  _____

                                  Jill N. Parrish
                                  United States District Court Judge