# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **ELIZABETH STRAND and AMARA ENTERPRISES, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**USANA HEALTH SCIENCES, INC.,**<br><br>Defendant. | **PRELIMINARY RULINGS REGARDING USANA'S *IN CAMERA* REVIEW**<br><br>**Case No. 2:17-cv-00925-HCN-JCB**<br><br>**District Judge Howard C. Nielson, Jr.**<br><br>**Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiffs Elizabeth Strand and Amara Enterprises, Inc.'s (collectively, "Ms. Strand") Short Form Motion to Compel the Production of Documents and Deposition Testimony Improperly Withheld as Privileged.[2] The court held oral argument on the matter on May 25, 2021.[3] At the conclusion of the hearing, the court ordered Defendant USANA Health Sciences, Inc. ("USANA") to submit the documents for an *in camera* review.[4] On June 1, 2021, USANA submitted to the undersigned's chambers its challenged documents *in camera* with the privilege log in Excel spreadsheet form as the court ordered.

---

[1] ECF No. 23, 312.

[2] ECF No. 391.

[3] ECF No. 406.

[4] ECF No. 409.

The court has reviewed every document and provides a tentative ruling on each, which is provided on the spreadsheet that the parties submitted. The court will provide a link in a separate email from chambers that will allow the parties to access the court's spreadsheet. To provide context for the court's tentative rulings on each document, the court: sets forth the legal requirements for (I) attorney-client privilege and (II) work-product protection; (III) shares its preliminary legal analysis for the three categories of documents in the reviewed materials; and (IV) renders individual preliminary rulings for each document withheld and discusses the deposition testimony. Finally, the court (V) orders simultaneous briefing on the court's tentative rulings that will be due on or before August 2, 2021, and will precede oral argument on this matter, which is scheduled for August 9, 2021, at 3:00 p.m. via Zoom.

The court begins by setting forth the standards that it has used in evaluating USANA's privilege claims. The court discusses attorney-client privilege followed by the work-product doctrine.

## I.    ATTORNEY-CLIENT PRIVILEGE

Rule 501 of the Federal Rules of Evidence dictates how privilege is determined.[5] Pursuant to Rule 501, state law governs the applicability and scope of attorney-client privilege in diversity actions. In this case, Ms. Strand's action against USANA is based on Utah law. "[T]he mere existence of an attorney-client relationship 'does not ipso facto make all communications between them confidential.'"[6] Rather, the "communication between a lawyer and client must

---

[5] *ERA Franchise Sys., Inc. v. N. Ins. Co. of New York*, 183 F.R.D. 276, 278 (D. Kan. 1998).

[6] *Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 801 P.2d 909, 911 (Utah 1990) (quoting *Anderson v. Thomas*, 159 P.2d 142, 147 (Utah 1945)).

relate to legal advice or strategy sought by the client."[7] Thus, under Utah law, a party claiming attorney-client privilege must establish three elements: "(1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice."[8] The purpose of attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[9] The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[10]

Attorney-client privilege protects information only when an attorney is acting in a legal capacity.[11] In a corporate setting, "[a] party may successfully demonstrate applicability of the privilege to written communication between corporate and management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice."[12] "For a communication between non-attorney employees to be held

---

[7] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quotations and citation omitted).

[8] *S. Utah Wilderness All. v. Automated Geographic Reference Ctr., Div. of Info. Tech.*, 2008 UT 88, ¶ 33, 200 P.3d 643; *see also* Utah R. Evid. 504 (providing that a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services).

[9] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[10] *In re Grand Jury Proceedings*, 616 F.3d at 1182 (quotations and citations omitted).

[11] *See, e.g.*, *id.* ("Where questions only request information regarding communications where the attorney was acting as a 'conduit' for non-confidential information, the client may not invoke the attorney-client privilege."); *Brigham Young Univ. v. Pfizer*, No. 2:06cv890 TS, 2011 WL 2795892, at *3 (D. Utah July 14, 2011) (finding that communications are not privileged if they relate to general business or technical matters); *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 304 (D. Utah 2002) (excluding documents not subject to attorney-client privilege because the documents were "not shown to be confidential or for legal advice as distinct from business advice").

[12] *Brigham Young Univ.*, 2011 WL 2795892, at *3 (quotations and citation omitted); *see, e.g.*, *Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986) ("[T]he attorney must be acting in the role of legal counsel with

3

privileged, it must be apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice or the document itself must reflect the requests and directions of counsel."[13]

## II. WORK-PRODUCT DOCTRINE

The work-product doctrine protects from discovery those documents, things, and mental impressions of a party or its representative, particularly its attorney, developed in anticipation of litigation.[14] The doctrine is not intended to protect work prepared in the ordinary course of business or investigative work unless it was done so under the supervision of an attorney in preparation "for the real and imminent threat of litigation or trial."[15] For the doctrine to apply, there must be a real and substantial probability that litigation will occur at the time the documents were created. In diversity cases, work-product protection is governed by Fed. R. Civ. P. 26(b)(3).[16] To establish work-product protection, USANA must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[17]

---

respect to the information in issue before the privilege may attach. If the attorney is acting in some other role, as an ordinary businessman for example, the privilege may not be properly claimed.").

[13] *Adams v. Gateway, Inc.*, No. 2:02-cv-106 TS, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003) (quotations and footnote omitted).

[14] Fed. R. Civ. P. 26(b)(3).

[15] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007).

[16] *Frontier Refining, Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (stating that "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)" (quotations and citation omitted)).

[17] *Johnson v. Gmeinder,* 191 F.R.D. 638, 643 (D. Kan. 2000).

There are two components in determining whether documents are prepared in anticipation of litigation. The first is the causation requirement—the primary motivating purpose for preparation of the document must be anticipation of litigation rather than preparation in the ordinary course of business or preparation required by some external or internal mandate.[18] The second component imposes a reasonableness limit on a party's anticipation of litigation—the threat of litigation must be real and imminent.[19] Therefore, a party claiming work-product protection must demonstrate the document was prepared principally or exclusively to assist in anticipated or ongoing litigation and establish the underlying nexus between the preparation of the document and the specific litigation.[20]

---

[18] If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work-product doctrine. Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment. Accordingly, even if litigation is imminent, there is no work-product immunity for documents prepared in the ordinary course of business rather than for litigation purposes. *Binks Mfg. Co. v. Nat'l Presto Indus.*, 709 F.2d 1109, 1119 (7th Cir. 1983); Wright & Miller, *Federal Practice and Procedure, Civil*, § 2024. That is to say, the mere fact that a discovery opponent anticipates litigation does not qualify an "in-house" document as work product. *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982); s*ee, e.g., Fine v. ESPN, Inc*., No. 5:12-CV-0836, 2015 WL 3447690, at *7 (N.D.N.Y. May 28, 2015) ("[W]hile the Jones Affidavit states that the University anticipated litigation at the time of the 2005 investigation . . . , it offers no evidence, nor does the University claim now, that the documents produced during the investigation would not have been prepared in the same form absent the prospect of litigation . . . .").

[19] Because litigation can be anticipated, in a general sense, at the time almost any incident occurs—thus closing off much pertinent discovery—courts have interpreted the Rule to require a higher standard of anticipation to give a reasonable scope to the protection. There are many formulations of this level of threat, but the cases generally concur that a party must show more than a remote prospect, an inchoate possibility, or a likely chance of litigation. *See, e.g.*, *Kannaday v. Ball*, 292 F.R.D. 640, 649 (D. Kan. 2013) (stating that the "reasonableness limit on a party's anticipation of litigation" requires the threat of litigation to be "real" and "imminent"); *Leonen v. Johns–Manville*, 135 F.R.D. 94, 97 (D.N.J. 1990) (providing that there must be "an identifiable specific claim or impending litigation when the materials were prepared" for the protection to apply); *Carver v. Allstate Ins. Co*., 94 F.R.D. 131, 134 (S.D. Ga. 1982) (explaining that the concern is no longer "with the contingency of litigation" but whether the probability of litigation is "substantial and imminent"); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 865 (D.C. Cir. 1980) (stating that a party must demonstrate that "at the very least some articulable claim, likely to lead to litigation" had arisen).

[20] *Kannaday,* 292 F.R.D. at 648-49.

The court next addresses the documents listed in USANA's privilege log and provided to the court for *in camera* review pursuant to the categories described below. The court presents its preliminary legal analysis for each document group, as well as a tentative ruling on each document in the privilege log spreadsheet that USANA submitted and a discussion of the deposition testimony.

## III.     PRELIMINARY LEGAL ANALYSIS

The documents submitted for review are divided into three categories and grouped by color.[21] These categories generally are comprised of (A) Yellow–Compliance Department Memoranda, (B) Pink–Compliance Department Checklists and Forms; and (C) Green–Email Communications with Counsel. The preliminary legal analysis for each color group is discussed in turn below.

### A.     Yellow–Compliance Department Memoranda

USANA asserts the memoranda in the Yellow category are protected from disclosure under attorney-client privilege. As shown, the court disagrees, and concludes that none of documents in this category are attorney-client privileged. The Yellow group of documents is comprised of routine memoranda authored by members of the Compliance Department (e.g., Compliance Officers, Compliance Assistants, and Compliance Specialists) and sent to "File" at the conclusion of all case investigations.[22] The materials appear to be prepared pursuant to Step 9 of USANA's Step-By-Step Procedures for Processing "Serious" Policy Violations (hereafter,

---

[21] Because the parties refer to the document groups by color, the court will also refer to the groups by color for ease of discussion herein.

[22] In a corporate setting, "communications from lower echelon employees [are] within the privilege as long as the communications were made to the attorney to assist him in giving legal advice to the client corporation." *United States v. El Paso Co.*, 682 F.2d 530, 538 n.8 (5th Cir. 1982) (citing *Upjohn Co.*, 449 U.S. at 391).

"Compliance Protocol Sheet"),[23] which is the document setting forth the steps that the Compliance Department must perform when it receives complaint information from a DSR or DSR Supervisor.

As discussed, the attorney-client privilege protects only communication primarily motivated by the client's request for legal advice. Here, company policy *required* preparation of the memoranda at the conclusion of compliance investigations as part of a corporate recordkeeping exercise. The documents were created during routine investigations into unauthorized recruiting and performed within the Compliance Department without involvement of counsel. The primary purpose appears to be motivated by business concerns regarding unauthorized recruiting and fulfilling obligations under corporate policies and distributor contracts which, among other things, permit cancellation of distributorships for "cause" only.

Accordingly, at this stage, USANA has not shown that the materials were prepared for the primary purpose of receiving legal advice, but rather were prepared in the ordinary course of business of investigating serious complaints of unauthorized recruiting. The memoranda contain no references to law, legal advice, or litigation, and affixing a "Privileged and Confidential Prepared at the request of Counsel" label to a memorandum does not magically render it privileged when it contains no communication made or work done for the purpose of providing legal advice. Moreover, Jim Bramble's ("Mr. Bramble") attempt to label all case files "memoranda, checklists, and other documents" as necessary investigative steps in connection with legal advice is not persuasive. Steps 3-9 in the Compliance Protocol Sheet directly

---

[23] ECF No. 405-1 at 2-3.

contradict Mr. Bramble's claim that the documents were intended "exclusively" for him to formulate legal advice.[24] Were memoranda such as these attorney-client privileged, then nearly every investigative report from the Federal Bureau of Investigation and every other law enforcement agency would be attorney-client privileged because someday it may be reviewed by an attorney to determine whether to seek charges and how to prove them later. This cannot be. Unless USANA can establish otherwise, the court concludes the documents are not attorney-client privileged.

### B.  Pink–Compliance Department Checklists and Forms

USANA asserts both attorney-client privilege and work-product protection for the materials in the Pink category. These documents are compliance checklist forms for the purpose of aiding Administrative Assistants and Compliance Officers in their investigation of a Distributor's alleged breach. First, the court finds that none of the documents in the Pink category are subject to attorney-client privilege for the same reasons as the documents in Yellow category. The checklists were created pursuant to internal policy for the purpose of uniformly conducting investigations and to mitigate harm to the business from unauthorized recruiting and fulfilling contractual obligations, among other things. The content of these checklists does not encompass or reveal legal advice, and the underlying facts and events contained therein are not subject to privilege.

Next, the court finds the documents are not entitled to work-product protection. The work-product doctrine protects documents primarily motivated by a corporation's involvement in

---

[24] ECF No. 400-3 at ¶ 5.

or reasonable anticipation of litigation. Here, the documents were created in the ordinary course of business and prepared pursuant to internal policy and procedure, and although USANA may have anticipated litigation, this was not the motivating factor for creating the documents. Therefore, because they were created in accordance with company policy in the ordinary course of business, such documents are not protected by the work-product doctrine unless USANA can show that they were specifically created to aid litigation strategy or defenses.

      C.      **Green–Email Communications with Counsel**

USANA alleges that the email communications in the Green category are protected from disclosure under attorney-client privilege and the work-product doctrine.[25] The court concludes that most of the documents in the Green category are not attorney-client privileged communications or protected under the work-product doctrine. Most of the documents relate to Dr. Strand's participation in the Ariix webinar and cancellation of Ms. Strand's Distributorship. The email communications are made by or sent to in-house counsel, Mr. Bramble.

Attorney-client privilege protects only confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. Where an attorney is functioning in some other capacity (e.g., as a business advisor), there is no privilege. Here, Mr. Bramble's communications with USANA executives, Division Directors, and Compliance Committee members are business-related, not legal. In general, they summarize discussions and provide updates to USANA employees on the progress of the Strand investigation and do not appear to be created for the purpose of seeking or transmitting legal advice. Mr. Bramble's status

---

[25] USANA asserts only attorney-client privilege for Documents 552-53, 555-84, 558-90.

9

as an attorney does not transform what would otherwise be business communications into legal communications. For example, Mr. Bramble's July 12, 2011 email to Executive Management (Document D) provides an update on the situation with Dr. Strand and Ms. Strand, describes communications with them, gives his impression of the situation, and relays next steps. Indeed, USANA's own internal description of the communication is "Jim Bramble's email information management of Strand situation." The fact that Mr. Bramble, an attorney, drafted this status update communication does not turn the email into a privileged communication.[26] Likewise, the content of Mr. Bramble's communication to the Compliance Committee does not support a finding that rendering legal advice was the predominant purpose. For example, the content of the September 7, 2011 communication (Document 573) itself establishes the purpose was business, not legal, advice as Mr. Bramble directly states in the email that, "Dan has authorized me to send summary for your vote on this case." However, the communication between Mr. Bramble and Keng Hean Ng that follows this email does pertain to legal advice and, therefore, that communication is privileged and should be redacted.

The court is also not convinced that the draft letter sent to Mr. Bramble for approval (Document A) entitled, "what do you think thumbs up send it thumbs down means don't," contains legal advice. The mere fact that legal counsel was involved in drafting a letter does not automatically render it subject to attorney-client privilege. Based on the content and the context

---

[26] *Walker v. N.H. Admin. Office of the Courts*, No. 11-CV-421-PB, 2013 WL 672584, at *8 (D.N.H. Feb. 22, 2013) (noting that investigation summaries and updates are not legal advice).

of the draft letter, there is no evidence of legal advice within the document or that legal advice was sought or given.[27]

As for USANA's assertions of work-product protection, the court does not find it applies. The fact that USANA may have anticipated litigation does not make *all* documents thereafter generated by or for in-house counsel automatically protected under the work-product doctrine. Here, although litigation may have been anticipated, the primary concern of the communications does not involve the facilitation of legal advice but rather is business-focused as USANA strategizes the appropriate course of action in light of Ariix's competitive posture and the Strand's engagement with a direct competitor.

Moreover, Mr. Bramble's involvement in the investigation appears, in part, tailored to impress upon Dr. Strand and Ms. Strand the seriousness in which USANA viewed their actions. This suggests a business rather than a legal purpose. Although the information developed during the course of the investigation may be helpful in future legal proceedings against Ms. Strand, USANA has shown neither that the emails contain confidential communication made for the purpose of facilitating the rendition of legal advice nor that the emails were motivated by the anticipated litigation rather than by something else.

**IV. INDIVIDUAL RULINGS AND DEPOSITION TESTIMONY**

The court renders individual preliminary rulings for each document withheld as privileged. As noted above, the court reviewed each document to determine whether attorney-client privilege or the work-product doctrine applies. The court's rulings with respect to

---

[27] *In re Syngenta AG MIR Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *7 (D. Kan. Mar. 24, 2017) ("[T]he attorney-client privilege does not attach to simple editing or 'word-smithing' by counsel."); *see also Entrata, Inc. v. Yardi Sys., Inc.*, No. 2:15-CV-00102-CW-PMW, 2018 WL 3055755, at *3 (D. Utah June 20, 2018).

each document in the privilege log and submitted *in camera* are provided on the spreadsheet that USANA submitted. The court will provide a link in a separate email from chambers that will allow the parties to access the court's spreadsheet.

As to USANA's assertions of attorney-client privilege during the depositions of Dan Whitney,[28] James Bramble,[29] Lori Truman,[30] and Kevin Guest,[31] it appears that USANA's counsel improperly directed the deponents not to answer certain questions about the Strand investigation on the basis of attorney-client privilege. Counsel's deposition questions present as being questions of fact, which are not subject to attorney-client privilege. Given the well-established rule that the privilege protects communications rather than historical facts or events,[32] and considering the court's preliminary rulings on privilege set forth herein, the court finds USANA's invocation of privilege during the depositions improper. Ms. Strand requests that the court reopen the depositions for the deponents to answer the questions. At this stage, the court is not inclined to wholly reopen the depositions but rather is inclined to allow Ms. Strand to re-depose the deponents by written questions pursuant to Fed. R. Civ. P. 31(2)(A)(ii). The parties should address the propriety of the assertions of privilege as to the deposition testimony and the appropriate remedy in the event the court concludes the solicited testimony is not subject to attorney-client privilege in their briefing memoranda.

---

[28] ECF No. 391-2.

[29] ECF No. 391-3.

[30] ECF No. 391-4.

[31] ECF No. 391-5.

[32] *Upjohn Co.*, 449 U.S. at 395.

## V. ORDER FOR BRIEFING

The parties shall file simultaneous briefing regarding the court's tentative rulings no later than August 2, 2021. The parties' briefs shall not exceed 10 pages (including caption, facts, and legal arguments). The briefing should also address whether the court should impose the reasonable expenses of preparing and litigating the motion to compel under Fed. R. Civ. P. 37(a)(5). Oral argument is scheduled for August 9, 2021, at 3:00 p.m. via Zoom.

IT IS SO ORDERED.

DATED July 20, 2021.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge